UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,       No.  06-20080

-vs-            District Judge Arthur J. Tarnow

ANTONIO BARNETT     Magistrate Judge R. Steven Whalen

    Defendant.
_____ /

## REPORT AND RECOMMENDATION

   Before the Court is Defendant's Motion to Quash Search Warrant and Suppress Evidence [Docket #13], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  I recommend that Defendant's motion be DENIED, and in so doing, I make three findings, which are discussed below: (1) Defendant has standing to challenge the search warrant, (2) the affidavit in support of the search warrant is insufficient to support a finding of probable cause, but (3) under the facts of this case, the good-faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), requires that the motion to suppress be denied.

## I. FACTS

   Defendant Antonio Barnett is charged with possession with intent to distribute cocaine.  21 U.S.C. §841(a)(1).  The charge stems from cocaine that was seized pursuant to a search warrant that was executed on December 6, 2002 at 15010 Hartwell in the City of Detroit.

   The search warrant was issued by a 36th District Court magistrate, based on an affidavit sworn to by Detroit police officer Joseph Smith.  After setting forth his experience

as a law enforcement officer, Smith states in the affidavit that he

> "was working in conjunction with a credible and reliable SOI. Information from this SOI has been used on over 3 occasions and has been proved credible and reliable. Information from SOI has been used in United States Federal Court cases that resulted in convictions."

Officer Smith then set forth the following facts regarding 15010 Hartwell:[1]

> "On 12-3-02, affiant met with SOI. SOI stated that seller distributes kilogram quantities of cocaine in the Detroit area. SOI stated that seller utilizes the target to store the cocaine and makes frequent, momentary stops throughout the day at the target to retrieve quantities of cocaine for delivery. SOI further stated that the seller had recently moved to a townhouse in Novi, MI. On 12-4-02, members conducted surveillance and observed the seller arrive at the target on 2 separate occasions. Each time the seller arrived at and entered the front door of the target. On each occasion, the seller remained in the residence less than 10 minutes, exited the front door and then left the area. Surveillance of the sellers travel was not done due to manpower constraints."

Attached to the government's reply as Exhibit 8 is the DEA report ("DEA 6") regarding the execution of the search warrant. The report states that at approximately 6:20 p.m., on December 6, 2002 (the day after the search warrant was obtained), Defendant arrived at 15010 Hartwell and entered the house. When he left about 15 minutes later, Defendant was arrested. At that time, other agents entered the house, arrested the resident, Marzonda Moore, and executed the search warrant. In his pleadings, Defendant identifies Marzonda Moore as his cousin.

The Defendant was found to have three keys to the house on his person. Moore told the agents that the Defendant had keys to her residence, and that he "often visited her residence to make phone calls on his cellular phone." The Defendant signed a statement that "[t]he cocaine found at 15010 Hartwell, Detroit, MI. Was my cocaine. Marzonda Moore did not know the cocaine was in her residence."

## II.    ANALYSIS

---

[1] References in the affidavit to "the target" refer to 15010 Hartwell.

## A. Standing

The "Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A defendant who alleges that the search of a house violated his Fourth Amendment rights has the burden of showing that he had a legitimate expectation of privacy in the place that was searched, and to meet that burden must satisfy a two-pronged test: (1) he must manifest an actual, subjective expectation of privacy, and (2) that expectation is one that society is prepared to recognize as legitimate. *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988).

A person does not have to be a resident of the premises in order to have a generally recognized expectation of privacy, and hence to claim the protections of the Fourth Amendment. In *Minnesota v. Olson*, 495 U.S. 91, 98, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Supreme Court held that an overnight guest in someone else's home had a legitimate expectation of privacy, and could therefore challenge a warrantless entry into that home to execute an arrest warrant.[2] However, in *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), the Court held that persons who were present in an apartment not as overnight guests, but only for the commercial purpose of packaging drugs for sale, did not have a legitimate expectation privacy. *See also United States v. Pollard*, 215 F.3d 643, 647-48 (6th Cir. 2000).

In the present case, the Defendant, while not a resident of the house, had an actual and legitimate expectation of privacy in the premises. He had a previous, familial relationship with the resident, his cousin, Ms. Moore, and had keys to the house which allowed him not only unrestricted access, but the ability to exclude others. That Ms. Moore gave the

---

[2]The *Olson* Court stated that "[s]taying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society." *Id.*

Defendant this access shows "acceptance into the household" that gives rise to a protected Fourth Amendment interest. *Minnesota v. Carter, supra*, 525 U.S. at 90. In this regard, the Court in *U.S. v. Heath*, 259 F.3d 522, 532-33 (6th Cir. 2001), stated:

> "The Supreme Court has further clarified that, when determining whether a defendant is entitled to the protections afforded by *Olson*, reviewing courts should consider whether there was a 'previous relationship' with the apartment lessee or if there is any indicia 'of acceptance into the household.' *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). *See also United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir.1988) (finding that defendant, who had 'unrestricted access [,] ... [was] allowed to stay overnight 'as often as he felt' and a key, established a legitimate expectation of privacy in the apartment)."

The Sixth Circuit in *Heath* also found it significant that, as in the present case, the defendant, who was a cousin of the resident, "also possessed a key which, by the officers' own testimony, allowed Heath unfettered access to the apartment and the ability to admit and exclude others." *Id.*

Therefore, the Defendant has standing to challenge the search warrant.

## B. Probable Cause

In *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court set forth the basic standard for assessing whether an affidavit establishes probable cause to issue a search warrant:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him,...there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed" (internal quotation marks omitted).

A magistrate's probable cause determination "should be paid great deference by reviewing courts." *Id.*, 462 U.S. at 236. However, that deference is not absolute, and reviewing courts must ensure that the issuing magistrate did "not serve merely as a rubber stamp for the police." *United States v. Leon*, *supra,* 468 U.S. at 914, quoting *Aguilar v.*

*Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Leon,* at 915, quoting *Illinois v. Gates, supra*, 462 U.S. at 239. In assessing the issuing magistrate's probable cause determination, the reviewing court is concerned only with those facts which appear within the four corners of the affidavit. *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973); *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998), citing *Whitely v. Warden*, 401 U.S. 560, 564-65, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005).[3]

The critical information regarding the "target" house in this case came from a confidential informant ("SOI"). In such case, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information...." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). In *United States v. McCraven*, 401 f.3d 693, 698 (6th Cir. 2005), the Court held that where an informant's past reliability is spelled out in the affidavit, probable cause

_____

[3] Contrary to the government's position at oral argument, the *Leon*/good-faith analysis is likewise restricted to the face of the affidavit. "We further conclude that a determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *Laughton* at 751. *See also United States v. Hython*, 443 F.3d 480, 487 (6th Cir. 2006). The rare exception to this rule, not applicable to the present case, occurs where the facts make it clear that information that is orally given to the magistrate, and relied upon by the magistrate, is inadvertently omitted from the affidavit through a "scrivener's error" or "ministerial oversight." *See United States v. Frazier*, 423 F.3d 526, 535-36 (6th Cir. 2005). The limited nature of the *Frazier* exception was set forth in *Hython*:

"The *Frazier* exception does not apply in this case. Although the district court felt that the affidavit 'implicitly indicated' that the controlled buy had taken place in temporal proximity to the warrant application, the record does not make this fact explicit in any way, nor does it indicate an awareness on the part of the issuing magistrate of the timing of the controlled buy." 443 F.3d at 488.

may be found even without independent police corroboration of the informant's story.[4]

Here, the affidavit states that the SOI has "been used on over 3 occasions and has been proved credible and reliable." This somewhat conclusory statement is followed by the fact that "[i]nformation from SOI has been used in United States Federal Court cases that resulted in convictions." Under *Allen, Pelham* and *McCraven*, the reliability of the informant was sufficiently established to obviate the necessity of substantial independent police corroboration.

However, this does not end the probable cause inquiry. Although the informant may be deemed sufficiently reliable, it is necessary to examine the actual substance of the information he provided. For example, if this reliable informant had said, "Yesterday I bought cocaine from the Defendant at the Hartwell house," or "I was inside the Hartwell house yesterday and I saw cocaine and guns," that information would support a finding of probable cause without independent corroboration, because the informant was shown to be reliable and because he actually observed drug-related activity in the house. The situation here is different. The informant merely *concludes* that the "seller" distributes kilogram quantities of cocaine that he stores at the Hartwell house. There is no indication that the informant was ever in the house, or that he ever purchased cocaine from the Defendant, or that he ever saw the Defendant sell cocaine anywhere. There is not even a hint as to how he came by his conclusions–were they based on personal knowledge, or on hearsay from other sources of untested and unknown reliability?

Furthermore, there is an important temporal component of probable cause. "A warrant must be supported by 'facts so closely related to the time of the issue of the warrant as to

---

[4]*McCraven* based this holding on *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000)(en banc) and *United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986), *cert. denied* 479 U.S. 1092 (1987).

justify a finding of probable cause *at that time*.'" *United States v. Hython, supra*, 443 F.3d at 485 (emphasis in original), quoting *Sgro v. United States*, 187 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932).  Apart from the possible double-hearsay problem, this affidavit sets forth no time frame as to when or how long ago the Hartwell house was used to store cocaine.  Indeed, the informant's statement that "the seller had recently moved to a townhouse in Novi, MI" would tend to show, if anything, that the seller moved his operation to a different location.

Thus, even if the information in the affidavit had come from a known, named and reliable source, it does not provide a substantial basis for finding probable cause.

### C.    The Good Faith Exception to the Exclusionary Rule

Generally, when the police obtain evidence in violation of the Fourth Amendment, "the judicially developed exclusionary rule...precludes its use in a criminal proceeding against the victim of the illegal search and seizure."  *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987).  However, in *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court carved out a so-called "good-faith exception" to the exclusionary rule, directing that courts should not suppress evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *See also United States v. Weaver, supra*, 99 F.3d at 1380 ("[T]he exclusionary rule 'should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" (quoting *Leon*, 468 U.S. at 905)).  Nevertheless, there are exceptions to the good-faith exception, and the Sixth Circuit has identified at least four circumstances where its application would be inappropriate: (1) where the issuing magistrate is misled by information the affiant knew was false, or would have known was false except for his or her reckless disregard for the truth;

(2) where the magistrate totally abandoned his or her judicial role; (3) where the affidavit is so completely lacking in factual support that an official belief that probable cause exists would be entirely unreasonable; and (4) where the warrant itself is facially deficient, for example, failing to particularize the place to be searched or the items to be seized. *Weaver*, 99 F.3d at 1380.

It is the third exception–objectively reasonable reliance–that is at issue in this case. "The showing required to establish that reliance was 'objectively reasonable' is less than the 'substantial basis' showing required to establish probable cause." *United States v. Hython, supra*, 443 F.3d at 484. Stated differently, "it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for good-faith reliance." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

In *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004), aerial police surveillance revealed a patch of marijuana growing in a field approximately 900 feet from the defendants' house. The Sixth Circuit held that an affidavit in support of a search warrant for the house was insufficient because it "did not provide a substantial basis for the issuing judge' conclusion that probable cause existed to search the Carpenters' residence, because it failed to set forth sufficient facts that incriminating evidence would be found *there*, rather than in some other place." However, even though the search warrant was invalid, the Court applied the *Leon* good-faith exception to the exclusionary rule because there was at least a minimally sufficient nexus between the house and the marijuana:

> "The affidavit in the case before us failed to provide a substantial basis for probable cause because it did not provide the required nexus between the residence and the illegal activity. However, the affidavit was not completely devoid of any nexus between the residence and the marijuana that the police observed. Rather, it noted both that the marijuana was growing 'near' the residence and that 'there is a road connecting' the residence and the marijuana plants." *Id.*, at 595-96.

*See also United States v. VanShutters*, 163 F.3d 331, 331, 337 (6th Cir. 1998) (applying *Leon* where there were no facts connecting the defendant, a suspected counterfeiter, to the residence searched, but noting that "only a police officer with extraordinary legal training would have detected any deficiencies" in the affidavit); *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994) (*Leon* applied to search of a safe deposit box, where the search warrant affidavit provided "no material connection between the bank and any criminal activity," but was based primarily on the officer's "training and experience"). *Compare United States v. Weaver, supra* (*Leon* inapplicable where the affidavit was a "bare bones," boilerplate affair, based entirely on an anonymous tip, which lacked any particularized incriminating facts and used conclusory statements); *United States v. Hove*, 848 F.2d 137, 139-40 (9th Cir. 1988) (*Leon* inapplicable where the affidavit offered "no hint as to why the police wanted to search the residence"); *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006)( not even a "minimal nexus" between the alleged criminal activity and the place to be searched); *United States v. Laughton, supra*, 409 F.3d at 751 (affidavit showed only "the address of the premises to be searched, a summary of the deputy's professional experience, and two acontextual allegations against Laughton").

As discussed above, the affidavit in this case was insufficient to support a finding of probable cause. However, it did show at least a minimal connection between 15010 Hartwell and narcotics activity that was sufficient, under *Leon's* objective test, to posit that a reasonable officer would have believed the affidavit was sufficient to support the issuance of the warrant. The affidavit showed that (1) a reliable informant said that the Defendant was a kilogram-level dealer; (2) the informant said that the Defendant (the "seller") stored the drugs in the Hartwell house, and made brief stops there to pick up the drugs; and (3) the police observed the Defendant make two brief stops at the Hartwell house the day before the

search warrant was obtained. It therefore showed a connection between that house and illegal activity which was at least as strong as that shown in *Carpenter, VanShutters and Schultz.* Unlike *Weaver, Hove, McPhearson* and *Laughton*, it cannot be said that the affidavit in this case was "devoid of any nexus" between the residence and illegal drugs. *Carpenter*, 360 F.3d at 595.

Therefore, I find that the officers' reliance on the erroneously issued search warrant was objectively reasonable, and done in good faith. Under the *Leon* exception to the exclusionary rule, Defendant's motion to suppress evidence seized under that warrant should be denied.

## III.    CONCLUSION

For the above reasons, I recommend that Defendant's Motion to Suppress [Docket #13] be denied.

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same

order raised, each issue contained within the objections.


                                        S/R.  Steven Whalen
                                        R.  STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated:  September 19, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 19, 2007.


                                        S/G. Wilson
                                        Judicial Assistant