UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                               No. 06-20080

-vs-                                         District Judge Arthur J. Tarnow

ANTONIO BARNETT                   Magistrate Judge R. Steven Whalen

       Defendant.
                                       /

## REPORT AND RECOMMENDATION

This matter was previously referred for a Report and Recommendation (R&R) on Defendant's Motion to Quash Search Warrant and Suppress Evidence [Docket #13]. On September 19, 2007, I issued an R&R finding that (1) the Defendant had standing to challenge the search warrant for 15010 Hartwell in the City of Detroit, (2) the affidavit in support of the warrant did not support a finding of probable cause, and (3) nevertheless, the motion to suppress should be denied under the good-faith exception of *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). On January 18, 2008, the District Judge accepted in part and denied in part the R&R, agreeing that the Defendant had standing, and that the search warrant was not supported by probable cause, but finding that *Leon* did not apply. The Court therefore granted the motion to suppress evidence found in the Hartwell residence.

On January 30, 2008, the District Judge re-referred the matter for the following purpose:

> **Hearing and Determination pursuant to 28 USC 636(B)(1)(A) on:**
> Whether Evidence Seized from Defendant's person and a Statement he made <u>after</u> he was Arrested should be admissible because evidence was found during a search incident to a lawful arrest.

On April 3, 2008, pursuant to the order of reference, an evidentiary hearing and oral argument were held in this Court. For the reasons set forth below, I recommend that the evidence seized from the Defendant's person, as well as his post-arrest statement, be suppressed.[1]

## I. FACTS

Defendant Antonio Barnett is charged with possession with intent to distribute cocaine. 21 U.S.C. §841(a)(1). The search warrant, later found by this Court to be invalid, was issued by a 36th District Court magistrate, based on an affidavit sworn to by Detroit police officer Joseph Smith. The warrant commanded the search of not only 15010 Hartwell, but of the Defendant, Antonio Terrall Barnett.

DEA Agent Daniel Krause testified at the evidentiary hearing on April 3, 2008. He stated that based on information received from a confidential informant (CI) on December 3, 2006, he and other officers began surveillance of the Hartwell address the next day, April 4, 2006. He testified that he had used this CI on at least three occasions in the past, and that the CI had proved to be reliable. Agent Krause stated that the CI claimed to have observed the Defendant with cocaine inside the Hartwell residence on April 3rd. Of course, none of this information about the CI found its way into the search warrant affidavit.

On December 4, 2006, Krause and the other officers observed the Defendant stop by the Hartwell residence twice, each time staying in the house for 10 to 15 minutes. Krause testified that in his view, this was consistent with the CI's claim that the Defendant "made frequent, momentary stops at the residence several times a day for the purpose of distributing

---

[1] Under E.D. Mich. Local Rule 5.2(d), a motion to suppress evidence in a criminal case is a dispositive motion. Therefore, I must proceed by Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B), Fed.R.Civ.P. 72(b), and E.D. Mich. Local Rule 72.1(a))2)(C).

his cocaine from that residence."[2]

On December 5, 2006, the officers obtained the warrant directing the search of the Hartwell house and of the Defendant.

On December 6, 2006, the officers continued their surveillance of the house. Krause testified that the Defendant arrived at the house, entered it, and departed about 15 minutes later. In his written declaration, which is consistent with his testimony, Krause states:

> "Defendant arrived at the residence, entered it and departed within 15 minutes, and crossed the street and walked toward his vehicle. Agents arrested him at that time. Defendant was searched subsequent to his arrest, and found to be in possession of several items, including $3995 (U.S. Currency) and two clear knotted bags containing a white powdery substance, which later tested positive as cocaine."

After being advised of his *Miranda* rights, the Defendant gave an inculpatory statement.

## II. DISCUSSION

### A. The Search was Based on an Invalid Warrant

Having failed to convince the Court of the search warrant's validity, the government now argues that the Defendant was arrested based on probable cause independent of the warrant, and that the contraband found on his person was seized pursuant to a lawful arrest. The government also contends that since the arrest was proper, the Defendant's post-*Miranda* statement is admissible.

The problem with the government's *post hoc* argument is that it contradicts reality. This was not a search incident to an arrest; it was an search based on an invalid warrant,

---

[2] Attached to the government's supplemental brief [Docket #32] is the written declaration of Agent Krause, which is, for the most part, consistent with his testimony at the evidentiary hearing. At the hearing, Agent Krause testified that the statement in his declaration that the CI "had testified in federal court cases resulting in convictions" was not correct.

followed by an invalid arrest. At the evidentiary hearing, Agent Krause conceded that between December 4th, the first day of surveillance, and December 6th, the second day, the officers acquired only two additional pieces of information. First, that they had a search warrant for both the premises and the Defendant himself, and second, that the Defendant entered and exited the house one additional time. If the government is arguing that, apart from the search warrant, there was probable cause to arrest the Defendant on December 6th, then there was also probable cause on December 4th.[3]

The government argues that it is not unusual for the agents or the police to refrain from arresting a suspect, even when they have probable cause, in order to continue an investigation. Agent Krause acknowledged that agents might even delay an arrest for a period of months in order to gain additional information. But this was not a period of months, it was a period of two days, and the only additional information the officers obtained was to observe the Defendant arrive at and leave the house one additional time. This observation added little, if anything to the information they had on December 4th. The only thing of significance that changed in those two days was the acquisition of a search warrant, and it simply strains credulity and common sense to posit that the Defendant was stopped and searched for any reason other than the search warrant.

In *United States v. Baxter*, 946 F.2d 896 (6th Cir. 1991)(Table), the Sixth Circuit had invalidated a search warrant because, as in the present case, it was issued without probable cause and the *Leon* good-faith exception did not apply. The court then addressed the issue of whether the search was justified as being incident to a lawful arrest. The government's argument in *Baxter* was framed as follows:

---

[3] However, as discussed in the following section, there was in fact no probable cause on either December 4th or December 6th.

> "The government contends that Baxter committed an assault when he shut his front door and cut Detective Reed's arm. Therefore, the government argues that the officers had probable cause to arrest Baxter for assault and that entry of the house was proper to effectuate the arrest. Once inside the house, the officers were then authorized to conduct a protective sweep of the house under *Maryland v. Buie,* 494 U.S. 325 (1990), and seize items in plain view. *Coolidge v. New Hampshire,* 403 U.S. 443, 466-67 (1971). Also, the police could legitimately search Baxter and the area within his immediate control after a valid arrest. *Chimel v. California,* 395 U.S. 752 (1969).

The court rejected this argument, finding that the arrest flowed directly from the invalid search warrant:

> "The government's argument is based on the false assumption that the police officers acted properly when they forced their way into Baxter's home. *However, the undisputed facts are that the officers had no probable cause to search the residence because they had an invalid search warrant and lacked a good faith belief as to its validity.* Nor did the officers have probable cause to arrest Baxter prior to the alleged assault. The crucial fact here is that the officers attempted to enter the house prior to any alleged assault. The injury to Detective Reed occurred during the struggle at the door, after the officers had begun to force their way inside. *Under these facts the arrest was incident to the search rather than the search being incident to the arrest.*" (Footnote omitted)(Emphasis added).

Likewise in this case, the Defendant's arrest was inseparable from the execution of the invalid search warrant, a warrant that, as in *Baxter*, was issued without probable cause. Indeed, these circumstances are more compelling that *Baxter* because here, the search and arrest of the Defendant was *based* on the warrant, which authorized the search of his person. Given the exploitation of the of the "primary illegality" (the invalid warrant), and the absence of "means sufficiently distinguishable to be purged of the primary taint," *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), all evidence obtained as the result of Defendant's unlawful arrest–i.e., the contraband seized from him and his post-arrest statements to the police–must be suppressed as "fruit of the poisonous tree." *See Kaupp v. Texas*, 538 U.S. 626, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

### B. There was no Independent Probable Cause

The government argues that even disregarding the bad search warrant, the following facts gave the agents probable cause to arrest the Defendant without a warrant on December 6th: They were given credible information from a reliable informant that the Defendant stored cocaine at 15010 Hartwell, and made "frequent, momentary" stops there to pick up the drugs. On December 4th, they saw the Defendant arrive at the residence as "frequently" as two times, remaining about 10 or 15 minutes each time. On December 6th, they saw him arrive there a third time. He was arrested when he left the residence that day.

The determination of whether probable cause exists depends on the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *United States v. Hughes*, 898 F.2d 63, 64 (6th Cir. 1990), the Sixth Circuit adopted the four factors set forth in *United States v. Green*, 670 F.2d 1148, 1151-52 (D.C.Cir. 1981), to assess whether probable cause exists in a drug case:

> "The District of Columbia Circuit Court of Appeals has identified four factors which should be assayed in determining whether the 'totality of the circumstances' provides probable cause in a drug case: 1) the presence of a suspect in a neighborhood notorious for drug trafficking; 2) suspects engaging in a sequence of events typical of a drug transaction; 3) a suspect's flight after being confronted by the police; and 4) a suspect's attempt to conceal the subject of his activities. *United States v. Green*, 670 F.2d 1148, 1151-52 (D.C.Cir. 1981). We think that the *Green* factors provide a helpful framework in analyzing probable cause determinations in the drug trafficking area and therefore adopt these factors here."

In *Hughes*, the court validated the defendant's arrest because all four *Green* factors were present. By contrast, the agents in the present case had a relative paucity of information. There is no evidence that the Hartwell residence is in a drug trafficking or high crime area; the Defendant did not attempt to flee or resist arrest; and, unlike the defendant in *Hughes*, he did not attempt to hide or conceal anything. While Agent Krause testified that Defendant Barnett engaged in activity that was described by the CI–entering the house and

leaving after a short period of time–this was far less overtly suspicious than the situation in *Hughes*, where the "detectives saw Ms. Hughes pass a small object to a person in the Cadillac and then saw the person in the Cadillac hand cash to Eric Milbrooks." 983 F.2d at 64.

The Sixth Circuit's opinion in *United States v. Richard*, 983 F.2d 1070 (1992)(Table) is particularly illuminating. In *Richard*, as in the present case, an investigation began when the police received information from a confidential informant. The informant told the police

> "that Defendant Richard would be selling crack cocaine in front of an apartment building at 1096 Tully. The informant told [Officer] Porter that Richard had several match boxes containing crack cocaine and described defendant as a heavily built, black man who was approximately six feet tall. According to the informant, Richard was dressed in a red Chicago Bulls shirt and long black pants, and his pants pockets were bulging. The informant stated that he knew all this because he had witnessed Richard selling the crack cocaine." *Id.*, at *1.

The area around 1096 Tully was a high crime area known for drug trafficking activity. The police observed the defendant in that area and saw that he was wearing a red Chicago Bulls shirt and "long black pants with bulging pockets, as the informant had indicated." They also saw the defendant exchange something with another man. The defendant fled from and cleverly evaded the officers, but was apprehended on a later date.

The Sixth Circuit upheld Richard's warrantless arrest, finding that all four of the *Hughes/Green* factors were met. However, the Court cautioned that the information from the confidential informant, even as corroborated by the officers' observations, would not, standing alone, create probable cause ("However, we agree with defendant that at this point there would not have been sufficient evidence that a crime was being committed to justify a warrantless arrest based on probable cause."). *Id.* at *4. Rather, the Court held that it was "defendant's subsequent behavior that justifie[d] the arrest." *Id.* In particular, probable cause was based on the defendant engaging in an apparent hand-to-hand transaction in a

notorious drug trafficking area, his overheard statement that "he had to leave away from over there because he couldn't be going to jail again," and his flight from the police.

In Barnett's case, all the police had (apart from an invalid search warrant) was a minimally corroborated informant's tip. I say "minimally corroborated" because it is questionable whether the Defendant's arriving at and leaving the house three times over a two-day period constitutes the "frequent" activity that the CI described. It is certainly not the equivalent of a hand-to-hand transaction in a high-crime area. More importantly, unlike *Hughes* and *Richard*, none of the other factors is present.

Therefore, the agents had no probable cause independent of the search warrant, and all evidence obtained as a result of the Defendant's unlawful arrest must be suppressed. *Wong Sun v. United States, supra; Brown v. Illinois, supra*.

### III. CONCLUSION

I recommend that all evidence seized from the Defendant's person, as well as his post-arrest statements, be suppressed.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated: April 15, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 15, 2008.

s/Susan Jefferson  
Case Manager